State, to use of Brent, v. Grace's Adm'r.

THE STATE, TO THE USE OF BRENT, Respondent, v. GRACE'S ADMINISTRATOR *et al.*, Appellants.

1. A guardian died and a final settlement of his guardianship was made by his administrator, and by such settlement a certain sum of money was found to be due to the ward; *held*, in a suit on the guardian's bond, that this settlement by the guardian's administrator was binding on his estate, and created a *prima facie* liability on the part of his sureties.

## Appeal from St. Louis Court of Common Pleas.

This was an action on a guardian's bond, brought in the name of the State of Missouri by John Garnett, to the use of Eliza Brent. The bond was executed by Pierce C. Grace, as principal, and by G. W. Goode and I. W. Taylor, as sureties. This was a suit on the bond against A. J. P. Gareschè, administrator of said Grace, and against Goode and Taylor, the securities on the bond. The petition states that Pierce C. Grace, at the March term, 1850, of the St. Louis probate court, was appointed guardian of said Eliza Brent, a minor; that he executed a bond, with Goode and Taylor as securities, conditioned for the faithful discharge of his duties as guardian; that said Grace died; that Garnett was appointed guardian September, 1854; that afterwards A. J. P. Gareschè was appointed administrator of said Grace; "that the condition of said bond is broken in this, that said guardian did not

well, truly and faithfully discharge the duties of his office of guardian aforesaid in this, that upon final settlement of his guardianship with said St. Louis probate court there was found to be due and owing by the said Pierce C. Grace to the said Eliza a balance of $205.28, all of which will more fully appear," &c.

The court found the facts as follows: "That said Eliza Brent is a minor; that at the March term of the St. Louis probate court in 1850, Pierce C. Grace was appointed by said court guardian of said Eliza; that said Pierce, as principal, and said George W. Goode and Isaac W. Taylor, as sureties, executed the bond set out in the plaintiff's petition; that said Pierce died before September, 1854; that on the 19th of said September, John Garnett was duly appointed by said court guardian of said Eliza; that Alexander J. P. Garesché was afterwards duly appointed administrator of said Pierce; that on the final settlement of the guardianship of said Pierce at the June term, 1855, of said probate court, there was found to be due and owing by the said Pierce, as guardian as aforesaid, to the said Eliza, a balance of two hundred and five dollars and twenty-eight cents; the said sum so found to be due and owing has not been paid nor any part thereof; said probate court has never made an order on said Pierce or his sureties, nor upon the administrator of said Pierce to pay over said balance, nor was the payment thereof ever demanded of said administrator nor of these defendants before the institution of this suit; that said Pierce was also appointed guardian, as alleged in the answer, of Anna Maria Brent, Thomas Brent, Jane Brent, John Brent and Robert Brent, who, together with said Eliza, were heirs of Robert Brent, deceased; and that the funds which came to the hands of said Pierce so came as a common fund for all of said minor heirs; that the defendants Goode and Taylor were also sureties of said Pierce on all his bonds as guardian of all said minor heirs; that said Pierce was in advance to the said Anna Maria, Thomas, Margaret, Jane, John and Robert, as in the answer alleged. Whereupon the court declares that

the plaintiffs are entitled to recover of the defendants the sum of two hundred and eleven dollars and forty-three cents."

The defendants, Goode and Taylor, moved for a review. The grounds of this motion were, that the court should have found that the final settlement, made at the June term, 1855, of the said probate court, was made by the administrator of said Grace; that on the facts as found no legal cause of action is shown against said defendants, and on the facts as found defendants are entitled to judgment; that the facts as found show no breach of said bond on the part of said Grace, for whom said defendants were securities; that the defendants, Goode and Taylor, being securities for said Grace, are not liable for and can not legally be held responsible for the acts of other persons, and therefore are not liable for any settlement or balance on a settlement made in 1855, after the death of said Grace.

The court overruled the motion for a review.

*Gray* and *Wickham & Snead*, for appellants.

I. No breach of the bond was shown. There was no evidence to show that Grace was properly charged with any sum whatever. No inventory or settlement, made by him in his lifetime, was introduced, proven or found by the court to charge him; no act of his to show that he had any funds in his hands. The only evidence showing or tending to show that there had been funds in his hands was a settlement made at the June term, 1855, by some person unknown. This was no act of the principal, Grace, for whose acts Goode and Taylor stood responsible. It does not appear who made this settlement. It was the act of an outsider, and could not bind the securities. Granting that it was the act of Grace's administrator it would not bind the securities. If Grace died with funds of his ward in his hands, the debt would have to be proven up against the estate in the probate court like any other creditor's debt; and if the estate should not pay it, the securities of the guardian would be liable. What right had

the administrator of Grace, on his own motion, to make a settlement, or charge his intestate with a debt in favor of his intestate's ward, any more than he would have a right to admit any other claim against the estate without due presentment and proof? Again, no default on the part of Grace or his administrator to pay over is found by the court; on the contrary, the court expressly finds that the probate court had made no order to pay over, and finds that no demand had been made of defendants before suit brought. The death of Grace was no fault or dereliction of duty. Therefore there should have been a demand of Grace's administrator, or an order of court to pay over before there was a liability established. The case is different from the case of a revocation of an appointment by the court for some delinquency or default of the guardian.

II. The matter set up by defendants, showing that Grace was in advance to other heirs of the common fund, was an equitable defence.

*Farish*, for respondent.

I. The administrator of Grace had the right to make the settlement. (Sess. Acts, 1849, p. 55, § 5; Sess. Acts, 1851, p. 51, § 11; 9 Mo. 356.)

II. No order of payment and no demand were necessary. (Finney, adm'r, v. The State, to the use, &c., 9 Mo. 231; 9 Mo. 778, 356; 18 Mo. 353; 3 Mo. 130; 15 Mo. 228.)

III. The defendants did not give a common bond but separate bonds. The rights of each child are distinct, and the expenditures of each are separate and not common funds.

SCOTT, Judge, delivered the opinion of the court.

It is true that there is no privity between Garesché, the administrator of Grace, who was guardian of the minor Eliza Brent, and the plaintiff, who is the successor of Grace as guardian. The administrator of Grace, as such, has no control over the estate which Grace held as guardian. If Grace converted the trust funds in his hands, or incurred a liability to

his ward by the mismanagement of her estate, a claim for such misconduct might be preferred against his administrator, and proceeded with like other demands against a decedent's estate. But the act of March 3d, 1851 (Sess. Acts, 1851, p. 211) provides that when a guardian or curator dies, the county court may ascertain, in any practicable way, the amount in his hands, and his successor may have such proceedings against his securities as are authorized in cases where an administrator fails, when ordered, to pay demands allowed against an estate. We do not regard this act as restrictive to the remedies provided in the 13th and 14th sections of the 5th article of the administration law of 1845. There is no reason for so restricting the language of the act. A ward should be entitled to the same remedies for a breach of the condition of the bond given to secure the management of his estate, that those have who are interested in the estate of a decedent. The 8th section of the 7th article of the administration law gives a remedy, by an action on the bond, to any party injured, for a breach of any of its conditions. We have seen that the act of 1851, to which reference has been made, authorized the county court, in any practicable way, to ascertain the amount in the hands of the deceased guardian. It is no objection that the court made use of the administrator of Grace for this purpose. No one was more likely to know the situation of his accounts than his administrator, who had access to all his books and papers. The settlement of the accounts of Grace, the guardian, thus made, can not be regarded as the exhibition and allowance of a demand against his estate. The balance, thus ascertained, was binding on the estate of Grace, and created a *prima facie* liability on the part of his sureties, who might have shown the settlement to be erroneous. (Nolley v. Callaway County Court, 11 Mo. 445.) A sum being found in the hands of the guardian due to his ward, by the provision of the administration law, to which we have already referred, a suit was authorized on the bond. The petition has been examined and we find it like the declaration in the case of Finney et al. v. The

State of Missouri, 9 Mo. 624. No demand was averred, and though the declaration was closely scrutinized, it does not appear that any such objection as the omission of a demand was taken. When parties have resisted a claim on other grounds, and have failed, it is with a bad grace that they come into this court and object that no demand was made on them, when every thing in the record shows that if one had been made, it would have been to no purpose.

As the evidence is not preserved in the record, and as no review of the finding of the facts was asked for, we can not go into the question of the sufficiency of the proof to support the finding.

There is no foundation in law for the claim to a set-off made by the defendants, as there was a separate and distinct curatorship for each child and a separate bond for the management of each estate. The judgment is affirmed, the other judges concurring.